IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SYLVESTER DAVIS, JR., #211672,    )
                                  )
          Petitioner,             )
                                  )
v.                                )          Case No. 3:17-cv-675-RAH-SMD
                                  )                    [WO]
DEWAYNE ESTES and                 )
STEVEN T. MARSHALL                )
                                  )
          Respondents.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is Alabama inmate Sylvester Davis, Jr.'s ("Davis") petition for writ of habeas corpus under 28 U.S.C. § 2254.  Docs. 1, 16.  Davis challenges his 2013 Russell County conviction for murder and his resulting sentence of life without parole.  For the following reasons, the undersigned Magistrate Judge RECOMMENDS that Davis's petition be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    State Criminal Conviction

In November 2012, a Russell County grand jury indicted Davis for the murder of his former girlfriend, Yamisha Thomas, in violation of ALA. CODE § 13A-6-2.  Doc. 11-2 at 27–28.  At trial, the State's evidence showed that Thomas's mother reported her missing on April 24, 2011, when Thomas failed to pick up her children at their grandparents' house.  Doc. 11-3 at 112-15.  Testimony indicated that Davis was with Thomas on April 23, 2011,

the day before her mother reported her missing.  Doc. 11-4 at 127-29.  Davis initially told Thomas's mother he had not seen Thomas on April 23, but later told her he had gone shopping with Thomas that day.  Doc. 11-3 at 115–16.  During an investigation, police recovered Thomas's abandoned truck near a medical center in Columbus, Georgia. Doc. 11-4 at 146–47.

A break in the search for Thomas came on May 23, 2011 (a month after her disappearance), when agents with the Alabama Bureau of Investigation ("ABI") were questioning Macon County Jail inmate Jerry Foster, who worked for Davis at a detail shop in Phenix City.  Doc. 11-3 at 193–96; Doc. 11-4 at 85–87.  The agents knew Foster from other cases, and Foster had proven to be a reliable informant for the ABI.  Doc. 11-3 at 136–41.  Foster told the agents that Davis had picked him up on the evening of April 23, went to the rental home where Davis and Thomas once stayed, and then drove Thomas's truck to a hospital in Columbus while Foster followed in Davis's vehicle.  Doc. 11-3 at 200–01; Doc. 11-4 at 2–9, 85–87.  Foster stated that Davis then took him to Thomas's body in Phenix City, admitted to Foster that he had killed Thomas, and sought his help to conceal Thomas's body, but Foster refused.  Doc. 11-4 at 2–24.  Foster stated that as he walked away from Davis, he saw what appeared to be a body wrapped in a sheet.  Doc. 11-4 at 18. The feet were exposed with toenails painted.  Doc. 11-4 at 18–20.  After Foster informed ABI agents of these events, the agents took Foster to Phenix City, where he directed them to the place where Davis had tried to get him to help bury Thomas's body.  Doc. 11-4 at 85.  There, they found Thomas's body in a shallow grave, beneath a mattress in a wooded lot.  Doc. 11-4 at 88–94.

Foster testified for the State at Davis's trial and recounted the events of April 23, 2011, when Davis had taken him to Thomas's body in Phenix City and sought his help to conceal it.  Doc. 11-3 at 191–201; Doc. 11-4 at 2–81.  Several witnesses gave testimony indicating Davis and Thomas had a volatile relationship, that Davis had physically abused Thomas, had threatened her with a gun, had stalked and harassed her, and had served jail time for a theft, battery, and trespassing incident in which he had attacked Thomas. Doc 11-3 at 122–24; Doc. 11-4 at 149–62; Doc. 11-5 at 75–99, 154–59.  The State also presented testimony from a forensic analyst regarding data gleaned from cell phone towers indicating the location of Davis's telephone throughout the day Thomas disappeared. Doc. 11-5 at 187–201; Doc. 11-6 at 2–48.

While incarcerated before trial, Davis confessed to a fellow inmate, Trinity Bullock, that he had murdered Thomas, that he had strangled her and wrapped her body in some kind of tarp or a cloth or rug, and that he put her in a wooded area in a shallow grave. Doc. 11-6 at 50–52.  According to Bullock, Davis told him he was not worried about being convicted because Foster was likely to get blamed for the murder because he had shown police where to find Thomas's body.  *Id*. at 50–51.

On October 25, 2013, the jury returned a verdict convicting Davis of murder as charged in the indictment.  Doc. 11-2 at 11.  On November 15, 2013, the trial court sentenced Davis as a habitual offender to life in prison without parole.  *Id.* at 12–13.  Davis appealed, arguing that the trial court erred when it denied his motion for judgment of acquittal.  Doc. 11-7.  On March 6, 2015, the Alabama Court of Criminal Appeals issued a

3

memorandum opinion affirming Davis's conviction and sentence.  Doc. 11-9.  Davis did not seek rehearing or petition the Alabama Supreme Court for certiorari review.

### B.     State Post-Conviction Proceedings

On February 29, 2016, Davis, through counsel, filed a petition in the trial court seeking relief under Rule 32 of the Alabama Rules of Criminal Procedure ("Rule 32 petition").  Doc. 11-11 at 6.  In his Rule 32 petition, Davis raised the following claims:

- Trial counsel was ineffective for failing to adequately investigate the case.

- Trial counsel was ineffective for failing to request funds to hire an expert to challenge the State's cell phone evidence.

- Trial counsel was ineffective for failing to request funds to hire an investigator to seek out potential witnesses.

- Trial counsel was ineffective for failing to request a mistrial after two instances of juror misconduct.

- His waiver of a preliminary hearing was not knowingly made.

- He was deprived of a fair trial because of the State's violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

- There was newly discovered evidence, in the form of statements made by State's witness Jerry Foster on Facebook, that Foster did not testify truthfully at trial.

- Prosecutors failed to inform his counsel that Foster was not truthful on the stand.

Doc. 11-11 at 6–21.  On August 10, 2016, the trial court entered an order denying Davis's Rule 32 petition.  11-11 at 79–80.

Davis appealed, pursuing several—but not all—of the claims raised in his Rule 32 petition.  Doc. 11-12.  On July 7, 2017, the Alabama Court of Criminal Appeals issued a

memorandum opinion affirming the trial court's judgment.  Doc. 11-14.  Davis applied for rehearing, which was overruled.  Doc. 11-10 at 2.  Davis then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on September 15, 2017.  Doc. 11-15; Doc. 11-10 at 2.

## II.   DISCUSSION

On September 19, 2017, Davis initiated this habeas action by filing a § 2254 petition presenting 11 grounds for relief.  Doc. 1.  Davis filed an amendment to his § 2254 petition on November 16, 2017, again asserting 11 grounds for relief.  Doc. 16.  The grounds in Davis's amendment were nearly identical to the grounds in his original petition.  Collectively, Davis has set forth the following claims:

> <u>Ground One</u>: He was denied due process and a fair trial because the State's evidence was insufficient "to prove the corpus delicti and causal connection of death."

> <u>Ground Two</u>: He was denied due process and a fair trial because the State presented insufficient evidence corroborating the testimony of his alleged "accomplice," Jerry Foster.

> <u>Ground Three</u>: He was denied due process and a fair trial because the State's evidence was insufficient to support a finding of guilt.

> <u>Ground Four</u>: He was denied due process and a fair trial because the State failed to prove each element of the offense.

> <u>Ground Five</u>: Trial counsel was ineffective for failing to adequately investigate the case.

> <u>Ground Six</u>: Trial counsel was ineffective for failing to request funds to hire an expert to challenge the State's "legally questionable" cell phone evidence.

> <u>Ground Seven</u>: Trial counsel was ineffective for failing to request funds to hire an investigator to seek out potential witnesses.

Ground Eight: Trial counsel was ineffective for failing to request a mistrial after two instances of juror misconduct.

Ground Nine: He was denied due process and a fair trial because he did not knowingly waive a preliminary hearing.

Ground Ten: Newly discovered evidence in the form of statements made by Jerry Foster on Facebook indicated Foster was not truthful in his trial testimony, and the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the full terms of Foster's incarceration and the criminal cases pending against him.

Ground Eleven: The prosecutors failed to disclose that Foster was not truthful in his trial testimony about who had bailed him out of jail.

Doc. 1 at 9–17; Doc. 16 at 17–25.  In their answer to Davis's § 2254 petition, Respondents argue Davis has procedurally defaulted many of his claims.  Doc. 11 at 7.  Respondents contend Davis's remaining claims were correctly adjudicated on the merits in state court. *Id.* at 11.

## A.    Procedural Default

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Before a § 2254 petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised.  *See, e.g.*, 28 U.S.C. §§ 2254(b)(1), (c); *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001).  To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In Alabama, a complete round of the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to that court, and a petition for discretionary review—i.e., a petition for a writ of certiorari—filed in the Alabama Supreme Court. *See, e.g.*, *Smith v. Jones*, 256 F.3d 1135, 1140–41 (11th Cir. 2001); ALA. R. APP. P. 39, 40. The exhaustion requirement applies to state post-conviction proceedings as well as to direct appeals. *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003). Habeas claims not properly exhausted in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See, e.g.*, *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

A habeas petitioner can overcome a procedural default either through showing cause for the default and resulting prejudice,[1] or establishing a colorable showing of actual innocence.[2] Whether "cause" for a procedural default exists ordinarily turns on whether the petitioner can show that some objective factor external to the defense impeded efforts to comply with the State's procedural rules. *Murray*, 477 U.S. at 488. Examples of such impediments include a factual or legal basis for a claim not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a petitioner must show that the errors worked to his "actual and substantial disadvantage, infecting his entire [proceeding] with

---

[1] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[2] *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995).

error of constitutional dimensions." *Id.* at 494 (internal quotations and emphasis omitted).

A petitioner asserting actual innocence as an exception must establish that, in light of new

evidence, "it is more likely than not that no reasonable juror would have found [him] guilty

beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.

**B.     Davis's Procedurally Defaulted Claims**

Respondents argue that many of the claims in Davis's § 2254 petition are

unexhausted and procedurally defaulted for purposes of federal habeas review.  Doc. 11 at

7–11.

**1.     *Grounds One through Four***

Respondents argue that Grounds One through Four in Davis's § 2254 petition are

unexhausted and procedurally defaulted and therefore are not subject to federal habeas

review.  Doc. 11 at 8–9.  Those grounds are:

> Ground One: Davis was denied due process and a fair trial because the State's
> evidence was insufficient "to prove the corpus delicti and causal connection
> of death."
>
> Ground Two: Davis was denied due process and a fair trial because the State
> presented insufficient evidence corroborating the testimony of his alleged
> "accomplice," Jerry Foster.
>
> Ground Three: Davis was denied due process and a fair trial because the
> State's evidence was insufficient to support a finding of guilt.
>
> Ground Four: Davis was denied due process and a fair trial because the State
> failed to prove each element of the offense.

Doc. 1 at 9–12; Doc. 16 at 17–20.

Davis's Grounds One through Four present claims challenging the sufficiency of

the State's evidence.  All four claims were raised in Davis's direct appeal—where the

Alabama Court of Criminal Appeals found that Grounds One, Three, and Four were meritless and that Ground Two was not properly preserved for review and, alternatively, was without merit. Doc. 11-7: Doc. 11-9 at 8–16. Davis did not seek rehearing in the Alabama Court of Criminal Appeals and did not petition the Alabama Supreme Court for certiorari review. Therefore, he did not exhaust these claims by invoking a complete round of Alabama's appellate review process. Davis cannot return to state court to exhaust these claims because the direct-review process is over, and it is too late for him to pursue them on rehearing in the Alabama Court of Criminal Appeals and in a petition for certiorari review in the Alabama Supreme Court. Thus, the exhaustion and preclusion rules coalesce into the procedural default of Grounds One through Four in Davis's § 2254 petition.

Davis argues that his appellate counsel's failure to pursue Grounds One through Four in an application for rehearing in the Alabama Court of Criminal Appeals and in a subsequent petition for writ of certiorari in the Alabama Supreme Court amounted to ineffective assistance of counsel and constitutes cause excusing his procedural default so that his claims may be considered on their merits in this proceeding. Doc. 20 at 7–9. However, review by rehearing and by writ of certiorari constitute discretionary review, and a defendant is not entitled to counsel during a discretionary state court review. *Ross v. Moffitt*, 417 U.S. 600, 609 (1974). Because there is no constitutional right to counsel to pursue discretionary review after an appeal of right, Davis has no ineffective-assistance-of-counsel claim for his appellate counsel's failure to apply for rehearing or petition for writ of certiorari pursuing Grounds One through Four. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).

Furthermore, Davis never raised and litigated in the state courts a claim that his appellate counsel rendered ineffective assistance by failing to apply for rehearing or petition for writ of certiorari.  Therefore, such a claim cannot now constitute cause excusing the default of Grounds One through Four.  "[A]n ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default."  *Henderson*, 353 F.3d at 896.

Davis argues that the principles of *Martinez v. Ryan*, 566 U.S. 1 (2012), apply to excuse his procedural default of Grounds One through Four.  Doc. 20 at 9.  In *Martinez*, the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Martinez*, 562 U.S. at 17.  The *Martinez* Court's ruling is limited to claims of ineffective assistance of trial counsel in initial-review collateral proceedings.  *Id*. at 15–17.  The ruling does not provide an avenue to federal habeas review of attorney errors in other proceedings; it does not apply to a claim of ineffective assistance of appellate counsel or to the default of a claim of ineffective assistance of trial counsel that occurs at any point other than in the initial-review collateral proceeding.  *See Lambrix v. Sec'y, Fla. Dept. of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014).

Here, *Martinez* does not apply to Davis's substantive claims (regarding the sufficiency of the State's evidence) in Grounds One through Four, or to his claim of ineffective assistance of appellate counsel.  Davis has not demonstrated cause excusing his

procedural default.  Neither has he asserted or demonstrated actual innocence as a gateway to review of his otherwise defaulted claims.  Therefore, Grounds One through Four of Davis's petition are procedurally defaulted and not subject to federal habeas review.

### 2.    *Ground Nine*

In Ground Nine of his § 2254 petition, Davis claims he was denied due process and a fair trial because he did not knowingly waive a preliminary hearing.[3]  Doc. 1 at 16; Doc. 16 at 24.  Respondents argue that Ground Nine is unexhausted and procedurally defaulted because it was not raised on appeal from the denial of Davis's Rule 32 petition.  Doc. 11 at 9.  The undersigned finds that Davis did not pursue Ground Nine on appeal from the denial of his Rule 32 petition.  Thus, Davis did not exhaust the claim by invoking a complete round of Alabama's appellate review process.  Davis cannot return to state court to exhaust the claim because he cannot file another Rule 32 appeal.  Thus, the exhaustion and preclusion rules coalesce into the procedural default of Ground Nine.

Davis argues that his counsel in his post-conviction proceedings was ineffective for failing to pursue this claim in his appeal from the denial of his Rule 32 petition and that this deficient performance of his post-conviction counsel constitutes cause excusing his procedural default so that Ground Nine may be considered on its merits in this proceeding.  Doc. 20 at 10.  Davis also argues that the principles of *Martinez* apply to excuse his procedural default of Ground Nine.

---

[3] Davis presents no facts or arguments in support of this claim. *See* Doc. 1 at 16; Doc. 16 at 24.

However, because there is no constitutional right to counsel in post-conviction proceedings, Davis has no ineffective-assistance-of-counsel claim for his post-conviction counsel's failure to pursue Ground Nine on appeal from the denial of his Rule 32 petition. Further, this claim of ineffective assistance of counsel was never presented and litigated in the state courts. Therefore, such a claim cannot constitute cause excusing the default of Ground Nine. Finally, the *Martinez* exception does not apply to Davis's substantive claim regarding his waiver of a preliminary hearing, or to his claim alleging ineffective assistance by his post-conviction counsel at the level of the appeal from the denial of his Rule 32 petition. Davis has not demonstrated cause excusing his procedural default. Neither has he asserted or demonstrated actual innocence as a gateway to review of his otherwise defaulted claim. Therefore, Ground Nine in his petition is procedurally defaulted and not subject to federal habeas review.

### 3.    *Unexhausted and Defaulted Portion of Ground Ten*

As part of Ground Ten in his § 2254 petition, Davis claims the State violated *Brady v. Maryland* by "failing to disclose the full terms of [Jerry] Foster's incarceration" and information about the criminal cases pending against Foster. Doc. 1 at 16–17; Doc. 16 at 24–25.

Although Davis presented this argument in his Rule 32 petition and on appeal from the denial of the petition, he did not pursue this argument in his petition for writ of certiorari filed with the Alabama Supreme Court after the Alabama Court of Criminal Appeals affirmed the denial of his Rule 32 petition. Doc. 11-15. Thus, Davis did not exhaust the claim by invoking a complete round of Alabama's appellate review process. Davis cannot

return to state court to exhaust the claim because he can no longer file a petition for writ of certiorari presenting the claim to the Alabama Supreme Court.  Thus, the exhaustion and preclusion rules coalesce into the procedural default of this part of Ground Ten of Davis's petition.

Davis maintains that he pursued this claim in his petition for writ of certiorari filed with the Alabama Supreme Court.  Doc. 20 at 11.  However, scrutiny of Davis's petition for writ certiorari reveals that he did not pursue that part of Ground Ten in his § 2254 petition claiming that the State violated *Brady* by failing to disclose the full terms of Foster's incarceration and information about the criminal cases pending against him.  Doc. 11-15.  Davis's petition for writ of certiorari pursued only that part of Ground Ten claiming that newly discovered evidence in the form of statements made by Foster on Facebook indicated Foster was not truthful in his trial testimony.  *Id*.

Davis does not demonstrate cause excusing his procedural default of his claim that the State committed a *Brady* violation by failing to disclose the full terms of Foster's incarceration and information about the criminal cases pending against him.  Neither does he assert or demonstrate actual innocence as a gateway to review of his otherwise defaulted claim.  Therefore, this part of Ground Ten in Davis's § 2254 petition is procedurally defaulted and not subject to federal habeas review.

### 4. *Ground Eleven*

In Ground Eleven of his § 2254 petition, Davis claims prosecutors failed to disclose that Foster was not truthful in his trial testimony about who bailed him out of jail.  Doc. 1 at 17; Doc. 16 at 25.  Respondents argue this claim is unexhausted and procedurally

defaulted because it was not raised on appeal from the denial of Davis's Rule 32 petition. Doc. 11 at 9.

Davis maintains he pursued this claim in his Rule 32 appeal.  Doc. 20 at 10. However, scrutiny of Davis's appellate brief in his Rule 32 appeal reveals that this specific claim was not presented by Davis.  Doc. 11-12.  Thus, Davis did not exhaust the claim by invoking a complete round of Alabama's appellate review process.  Davis cannot return to state court to exhaust the claim because he cannot file another Rule 32 appeal.  Thus, the exhaustion and preclusion rules coalesce into the procedural default of Ground Eleven in Davis's § 2254 petition.  Davis does not demonstrate cause excusing his procedural default of this claim.  Neither does he assert or demonstrate actual innocence as a gateway to review of his otherwise defaulted claim.  Therefore, Davis's Ground Eleven is procedurally defaulted and not subject to federal habeas review.[4]

### C.   Standard of Review for Claims Adjudicated on Merits by State Court

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") significantly limits the circumstances under which a habeas petitioner may obtain relief. *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. 2010).  For claims adjudicated on the merits by the state courts and properly before the federal court, a writ of habeas corpus shall be granted only if the state court proceeding:

---

[4] In Ground Seven of his § 2254 petition, Davis suggests that his trial counsel was ineffective for failing to procure an investigator to look into whether Foster testified truthfully about who bailed him out of jail. Doc. 1 at 15; Doc. 16 at 23.  Davis does not show that trial counsel was ineffective in this regard because he presents no evidence that Foster testified falsely about this matter.  Instead, Davis relies on wholly unsupported speculation.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause of § 2254(d)(1), a federal court may grant a writ of habeas corpus if the state court applies a rule different from the governing Supreme Court precedent or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant a writ if the state court correctly identifies the governing legal principle from our decisions, but applies it to the facts of the particular case in an objectively unreasonable way. *Id.*

"Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Rather, a reviewing court must determine: first, what arguments or theories supported or could have supported the state court's decision; and second, "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To meet this deferential standard, a "state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149,

1151 (2016) (citation omitted).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Under § 2254(d)(2), a state court's decision is not based on an "unreasonable determination of the facts in light of the evidence presented" merely because a federal court would have reached a different conclusion in the first instance.  *Brumfield v. Cain,* 576 U.S. 305, 313–14 (2015).  A reviewing federal court presumes a state court's factual-issue determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*  A federal court will not supersede a trial court's factual determinations if reasonable minds reviewing the record might disagree about the findings at issue.  *Cain,* 576 U.S. at 314.

### D.    Analysis of Davis's Claims Adjudicated on the Merits

#### 1.    *Grounds Five and Seven*

In Ground Five of his § 2254 petition, Davis claims his trial counsel was ineffective for failing to adequately investigate the case.  Doc. 1 at 12–13; Doc. 16 at 20–21.  Relatedly, in Ground Seven of his petition, Davis claims his counsel was ineffective for failing to request funds to hire an investigator to seek out potential witnesses.  Doc. 1 at 14–15; Doc. 16 at 22–23.

The controlling federal law for assessing claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* announced a two-part test by which an attorney is considered constitutionally ineffective if: (1) his "performance was deficient," and (2) that "deficient performance prejudiced the defense."

*Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  Scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's performance was reasonable.  *Id.* at 1314 (internal quotation marks omitted).  A federal court avoids "second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [a court] would not have chosen is guilty of rendering ineffective assistance."  *Id.* (internal quotations and alterations omitted).

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  To establish prejudice, a petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).  A petitioner must satisfy both components of the *Strickland* test to be entitled relief.  *Strickland*, 466 U.S. at 687.

In his Rule 32 petition, Davis raised the claims that his trial counsel was ineffective for failing to adequately investigate the case and for failing to request funds to hire an investigator to seek out potential witnesses.  Doc. 11-11 at 9–11, 13.  Davis pursued the claims on appeal from the denial of his Rule 32 petition and exhausted the claims by pursuing them in his petition for writ of certiorari filed with the Alabama Supreme Court. Docs. 11-13, 11-15.

In its memorandum opinion affirming the trial court's denial of Davis's Rule 32 petition, the Alabama Court of Criminal Appeals noted that Davis specifically alleged his

counsel was ineffective for failing to investigate: (1) whether Davis had, as Jerry Foster claimed at trial, tried to intimidate Foster; (2) evidence that Foster left Phenix City and stayed in Tuskegee before his arrest; (3) the circumstances surrounding Davis's and the victim's living arrangements; and (4) witnesses who allegedly saw Davis on the day the murder occurred and individuals whose names Davis provided to counsel.  Doc. 11-4 at 8.

Applying *Strickland*'s two-part analysis to Davis's failure-to-investigate claim, the Alabama Court of Criminal Appeals found that Davis (1) failed to plead specific facts regarding Foster's testimony about being intimated by Davis or explaining how Foster testified falsely about this matter; (2) failed to plead specific facts regarding Foster's return to Tuskegee or explaining why the issue was material; (3) failed to plead specific facts regarding the significance of his and the victim's living arrangements; and (4) failed to provide the names and expected testimony of any potential witnesses counsel failed to investigate.  *Id*. at 8–9.  After noting that claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result,[5] the Court of Criminal Appeals found Davis failed to show a reasonable likelihood that the outcome of his case would have been different had counsel conducted further investigation. *Id.* at 8–9.

The undersigned finds no error with the state appellate court's findings.  It is a matter of speculation whether any information beneficial to Davis's defense would have been

---

[5] *See Hunt v. State*, 940 So. 2d 1041, 1061 (Ala. Crim. App. 2005).

obtained had his counsel conducted an investigation into the matters cited by Davis. Further, Davis does not demonstrate that an investigator would have succeeded in finding witnesses who could have provided information or testimony beneficial to his defense. As the Court of Criminal Appeals noted, Davis failed to provide the names and expected testimony of any potential witnesses. The relevance and materiality of the matters cited by Davis are also not self-evident. Finally, Davis's cursory allegations demonstrate no reasonable likelihood that the outcome of the proceedings would have been different had his counsel conducted an investigation into the matters cited or obtained funds to conduct further investigation.

Accordingly, the state court decision rejecting Davis's claims that his counsel was ineffective for failing to adequately investigate the case and for failing to request funds for an investigator was neither contrary to nor an unreasonable application of *Strickland*. Neither did the state court decision involve an unreasonable determination of the facts in light of the evidence presented. Therefore, Davis is not entitled to habeas relief on Grounds Five and Seven in his petition.

### 2.    *Ground Six*

In Ground Six of his § 2254 petition, Davis claims his trial counsel was ineffective for failing to request funds to hire an expert to challenge the State's "legally questionable" cell phone evidence. Doc. 1 at 13–14; Doc. 16 at 21–22. The Alabama Court of Criminal Appeals considered and rejected this claim in its memorandum opinion affirming the denial of Davis's Rule 32 petition:

Davis argues that trial counsel failed "to make a motion to hire an expert to refute the case the State made regarding the cell phone data." Davis specifically argues as follows:

> "Trial counsel made no motion for extraordinary funds to hire a cell phone tower expert. The use of cell phone tower evidence is extremely dubious. This failure to limit the admittance of the State's witness or be able to counter with an expert on behalf of Petitioner very likely allowed in evidence that made more special factual findings [than] are allowed or scientifically supported enough to pass the *Daubert [v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993),] test required under Ala.R.Evid. 702."

Here, Davis failed to include specific facts regarding this issue. For instance, Davis did not give the name of a "cell phone tower expert" that trial counsel should have called as a witness or explain how the expert "would have countered the State's expert." *See Boyd v. State*, 913 So. 2d 1113, 1133 (Ala. Crim. App. 2003) (holding that a claim that failed to "disclose the manner in which any such expert would have countered the State's expert testimony was inefficiently pleaded). Furthermore, Davis failed to plead sufficient facts indicating that he would have been entitled to a court-funded "cell phone tower expert" if trial counsel had requested one. *See Boyd*, 913 So. 2d at 1133 (citing *Ex parte Moody*, 684 So. 2d 114, 119 (Ala. 1996) ("[T]he indigent defendant must show, with reasonably specificity, that the expert is absolutely necessary to answer a substantial issue or question raised by the state of to support a critical element of the defense.").

As with the above claim, Davis's claim in this regard failed to satisfy the prejudice prong of *Strickland*. In his petition, Davis argues that "[t]he exclusion of certain evidence, such as statements or items that did not have proper chain of custody, can make [or] break a case[.]" . . . Davis's statements, however, are nothing more than bare allegations. Therefore, summary dismissal of this claim was appropriate.

Doc. 11-14 at 9–10.

The undersigned finds that the state appellate court's rejection of Davis's claim is supported by the record. Self-serving speculation as to the testimony an expert witness might have provided fails to provide a basis on which to conclude that a defendant's trial

attorney performed deficiently. A petitioner must present evidence of the witness testimony in the form of actual testimony or an affidavit. *See, e.g.*, *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991); *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir.1984) ("[T]o successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony."). Davis has failed to make a factual showing sufficient to satisfy *Strickland*'s prejudice prong. *See, e.g.*, *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998).

Moreover, given the nature and quantum of other evidence against Davis, the undersigned finds that Davis demonstrates no reasonable likelihood that that outcome of his trial would have been different had his counsel obtained testimony from an expert to counter or weaken the import of the State's cell phone evidence. The cell phone evidence was far from the most compelling and important evidence of Davis's guilt presented by the State. The state court decision rejecting Davis's claim that his counsel was ineffective for failing to request funds to hire an expert to challenge the State's cell phone evidence was neither contrary to nor an unreasonable application of *Strickland*. Neither did it involve an unreasonable determination of the facts in light of the evidence presented. Therefore, Davis is not entitled to habeas relief on Ground Six in his § 2254 petition.

### 3. *Ground Eight*

In Ground Eight of his § 2254 petition, Davis claims his trial counsel was ineffective for failing to request a mistrial after two instances of juror misconduct. Doc. 1 at 15–6;

Doc. 16 at 23–24. The Alabama Court of Criminal Appeals considered and rejected this claim in its memorandum opinion affirming the denial of Davis's Rule 32 petition:

> Davis specifically argues that "someone in the venire poisoned the pool by declaring that Mr. Davis looked guilty despite no evidence having be[en] presented that point." Davis also argues that "one of the jurors had been having communications about the case with third party individuals."
>
> In *Reeves v. State*, 226 So. 3d 711, 753–54 (Ala. Crim. App. 2016), this Court held:
>
>> "To sufficiently plead a claim of juror-misconduct, a Rule 32 petitioner must, at a minimum, identify the juror who the petitioner believes committed the misconduct, must allege specific facts indicating what actions that juror took that the petitioner believes constituted misconduct, and must allege specific facts indicating how that juror's actions denied the petitioner a fair trial."
>
> Here, Davis failed to identify in his petition either juror that he alleged acted improperly or provide any specific detail regarding the "information" exchanged with the alleged third party. Although Davis argues that the alleged instances of misconduct "inevitably tainted the jury's outcome" and "unlawfully influence[d] the verdict, Davis failed to plead any specific facts "indicating how [these] actions denied him a fair trial."
>
> Furthermore, Davis did not plead sufficient facts showing that his trial counsel erred by failing to move for a mistrial based on his alleged juror-misconduct claim. In fact, Davis admits that the circuit court "fined and held in contempt" the juror that allegedly "shouted" that Davis was guilty. In light of that, Davis failed to plead facts indicating that the circuit court, after having admonished the juror for the instance of alleged misconduct, should have granted a mistrial on the same ground. *See Saffold v. State*, 570 So. 2d 727, 730 (Ala. Crim. App. 1990) (holding that trial counsel was not required to make futile or frivolous motions). Although Davis claims that he "alerted his counsel that one of the jurors had been having communications about the case with third party individuals," he does not explain whether he notified trial counsel in time to allow him to move for a mistrial. Therefore, summary dismissal of this claim was appropriate.

Doc. 11-14 at 10–11.

The undersigned finds that the state appellate court's rejection of Davis's claim is supported by the record. The lack of specificity in Davis's allegations—i.e., his failure to identify the jurors he believes committed the misconduct and to detail their misconduct, particularly with regard to the nature of one of the juror's alleged communications with third party individuals—is fatal to Davis's argument that his counsel was ineffective for failing to request a mistrial based on juror misconduct. Davis fails to demonstrate a reasonable likelihood that a motion for a mistrial based on juror misconduct was have succeeded under the circumstances. The state-court decision rejecting Davis's claim that his counsel was ineffective for failing to request a mistrial was neither contrary to nor an unreasonable application of *Strickland*. Neither did it involve an unreasonable determination of the facts in light of the evidence presented. Therefore, Davis is not entitled to habeas relief on Ground Eight in his § 2254 petition.

### 4.   *Adjudicated Portion of Ground Ten*

As part of Ground Ten in his § 2254 petition, Davis claims newly discovered evidence in the form of statements made by Jerry Foster on Facebook that indicated Foster was not truthful in his trial testimony. Doc. 1 at 16; Doc. 16 at 24. The Alabama Court of Criminal Appeals considered and rejected this claim in its memorandum opinion affirming the denial of Davis's Rule 32 petition:

> With regard to his first newly discovered evidence claim, Davis specifically argued that witness Jerry Wayne Foster's Facebook page "seem[ed] to show evidence that [Foster] was not being truthful in cases or information he gave to law enforcement. In his petition, Davis argued that in a recent Facebook post "Foster ma[de] a variety of assertions about him doing things to 'save my ass' and assertions that seem to show evidence that he was not being truthful in cases or information he gave to law enforcement." Attached to

his petition, Davis included a copy of the post as an exhibit to his petition.  It
stated as follows:

> "Shit niggas say I snitch ha its two different ways in it I save
> my ass cause he wasn't gone do it fa me the man set me up the
> nigga put all evidence on me to all dont kno he call 12 on me
> an tried to say he think I had some to do witj the killings so
> wen the caught me an had my prints on the shit witch I did
> touch but he made me touch an the bitch shot at me so ud ont
> know the half of that story just kno this that just a problem but
> dont forget u got jerry wayne who kinda give a fuck then u got
> wezzle we who just dont give a fuck ready fa wat eva ni get in
> my path an try to stop me yo ass gone lay I green pastor mf."

In this case, Davis failed to sufficiently plead this claim. Davis was required
to satisfy the requirements of Rule 32.1(e); at best, this evidence would have
amounted merely to impeachment evidence.

Moreover, to establish a claim of perjury, Davis had to plead sufficient facts
showing: (1) "that testimony given by a witness at trial was false"; (2) "that
there is a significant chance that had the jury heard the truth, it would have
reached a different result"; and (3) "that the movant is not relying on
evidence of which he was aware at trial and which he consciously decided
not to use to challenge the testimony of the perjured witness." *Hays*, 599 So.
2d at 1231–32.  Here, Davis does not demonstrate that Foster gave false
testimony at trial or that the jury, having heard the truth, would have reached
a different conclusion.   Therefore, summary dismissal of this claim was
appropriate.

Doc. 11-14 at 13–14.

The undersigned finds that the state appellate court's rejection of Davis's claim is

supported by the record.  To the extent Foster's Facebook post may be understood, it is at

least arguable that Foster's post reflects his concern that Davis was seeking to throw

suspicion for Thomas's murder on Foster, and for this reason, Foster told law enforcement

officials about the actual events and Davis's involvement in the crime.[6]  Beyond that, only speculation permits an inference of any particular meaning from Foster's post.  The post falls far short of showing that Foster perjured himself in his testimony at Davis's trial.  The state court decision rejecting Davis's newly-discovered-evidence claim was neither contrary to nor an unreasonable application of clearly established federal law.  Neither did it involve an unreasonable determination of the facts in light of the evidence presented.  Therefore, Davis is not entitled to habeas relief on this part of Ground Ten in his § 2254 petition.

## III.   CONCLUSION

For these reasons, the undersigned Magistrate Judge RECOMMENDS that Davis's petition (Docs. 1, 16) be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

Additionally, it is ORDERED that the parties shall file any objections to this Recommendation on or before **February 25, 2021**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which each objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation, and waives the right of the party to challenge on appeal the District Court's order based on

---

[6] Evidence presented at Davis's trial suggests that Foster's concern that Davis might try to cast suspicion for the murder on him was not wholly unwarranted.

unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see also Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 11th day of February, 2021.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE